UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL NO. 05-16-DCR
CIVIL NO. 06-172-DCR

UNITED STATES OF AMERICA                                    PLAINTIFF


VS:                              RECOMMENDED DISPOSITION


KENNETH W. ANDERSON                                         DEFENDANT

* * * * * * * *

This matter is before the Court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 by *pro se* Defendant Kenneth W. Anderson. *See* DE#71. The District Court, which sentenced Defendant, referred the matter to the undersigned for a report and recommendation. Having fully considered the record, including Defendant's petition and memo, the Government's motion to dismiss, and Defendant's response, the matter is ripe for review. *See* DE## 71, 82, and 84. For the reasons stated herein, the Court recommends that the District Court DENY Defendant's § 2255 motion to vacate, set aside, or correct sentence.

**I. Factual Background**

Defendant's plea agreement with the United States primarily informs the following factual history. *See* DE# 53.

Beginning in January of 2004 and continuing through July of 2005, Defendant engaged in a conspiracy with Co-Defendant Jesus Loya and others to possess and distribute marijuana. The conspiracy imported "large bulk shipments" of marijuana into the Eastern District of Kentucky in exchange for U.S. currency. The cash traveled through different channels back to the suppliers.

1

One method involved the physical delivery of cash by Co-Defendant Loya. *See* DE# 53, Plea Agreement ¶ 4.

At the direction of other conspirators, the Defendant and his confederates stored the imported "loads" of marijuana at various locations in and around Pike County, Kentucky and Virginia. One of these locations included Defendant's residence in Pike County. *See id.*

On June 8, 2004, authorities executed a federal search warrant for Defendant's residence. The ensuing search uncovered approximately 100 pounds of marijuana and $26,364 in U.S. currency. Defendant stipulated that the seized cash represented proceeds or substitute proceeds from the sale and distribution of marijuana. The amount of marijuana seized in the search is also consistent with the possession of marijuana with the intent to distribute. *See id.*

Under the plea agreement, Defendant stipulated that he "knew and understood" that the marijuana was being distributed and that proceeds from the transaction would be "circulated back to the suppliers." Defendant agreed that proceeds from the sale involved "sums greater than $10,000." Those proceeds would be transported "across state lines" and delivered to the suppliers. *See id.* Defendant ultimately admitted, in the plea agreement, that **it was foreseeable to attribute 1000 kilograms of marijuana to him for his part in the conspiracy**. *See* Plea Agreement ¶ 4 (emphasis added).

Based on probable cause as to the foregoing activities, the grand jury sitting in the Eastern District of Kentucky returned a five count indictment charging Defendant. *See* DE# 10, Indictment. The indictment named Defendant in Counts 1, 2, 4, and 5. *See id.* Pursuant to a plea agreement with the United States, Defendant agreed to plead guilty to Counts 1 and 5. *See* Plea Agreement ¶ 2. Count 1 provided that Defendant and others conspired to possess with the intent to distribute more

than 1000 kilograms of marijuana from January of 2004 through July of 2005.  *See* Indictment, Count 1.  Count 5 is a forfeiture provision relating to the proceeds and assets involved in the Count 1 offense.  *See id.*, Count 5.  In exchange for pleading guilty to these counts, the Government agreed to and did move to dismiss the remaining counts.  *See* Plea Agreement ¶ 2.

With respect to Counts 1 and 5, the plea agreement further provided that the United States could prove the underlying facts, related above, beyond a reasonable doubt.  Defendant agreed that the facts accurately represented his conduct and established the essential elements of the offense. *See id.* ¶ 4.  The plea agreement additionally outlined the essential offense elements for each count. *See id.* ¶ 3.

Under the agreement, Defendant expressly waived "the statutory right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence."  *Id.* ¶ 14.  In the agreement's final provision, Defendant and his attorney acknowledged that counsel fully explained the agreement, that Defendant understood its terms, and that Defendant voluntarily entered into the arrangement.  *See id.* ¶ 17.

The District Court rearraigned Defendant in connection with his plea agreement on September 12, 2005.  The Court placed Defendant under oath and fully assessed Defendant's competency to enter a plea.  *See* DE# 38, Rearraignment Hearing at 4-7.  At the hearing, Defendant represented to the Court that he reviewed the plea agreement, discussed the agreement with counsel, and understood its terms before signing.  *See id.* at 12.  The United States  summarized the plea agreement.  In relevant part, the prosecutor specifically explained that: the agreement lists the essential offense elements; Defendant acknowledges the accuracy of the factual account stated therein; the United States could prove those facts beyond a reasonable doubt; at least 1,000

kilograms of marijuana was a quantity foreseeable to Defendant; Defendant waives the statutory right to appeal and collaterally attack the guilty plea, conviction, or sentence; and that, by signing the agreement, Defendant indicated "a complete understanding of the plea agreement. . . and that [the] plea is free and voluntary." *See id*. at 14-16. Defendant then affirmed that the Government accurately summarized the plea agreement and that Defendant voluntarily entered into the plea agreement. *See id*. at 16.

The District Court also reviewed with Defendant specific provisions in the plea agreement, including Defendant's waiver. The Court explained to Defendant that he is "waiv[ing] the statutory right to appeal and the right to attack collaterally the guilty plea, conviction, and the sentence in this case." *Id*. at 24-25. Defendant specifically represented that he understood he was, by that provision, "waiving or giving up" the right. *See id*. at 25. The Court further admonished that "ordinarily, you would have the right to appeal those matters to the Sixth Circuit," but that Defendant "[i]n this particular case ... waived those rights." *Id*.

The District Court sentenced Defendant to 97 months of imprisonment and 5 years of supervised release. *See* DE# 64, Sentencing Hearing at 37. In doing so, the District Court sustained the Government's motion for a downward departure pursuant to § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e). *See id*. at 19. As a result, Defendant's sentence fell below the 120 month statutory minimum and the advisory guideline range.[1] *See id*. at 36-37.

---

[1] In determining the applicable guideline range, the District Court initially assessed Defendant with a base offense level of 32 due to the stipulated amount of drugs involved. *See* Sentencing Hearing at 17-18. The District Court reduced this level by 3 points for Defendant's acceptance of responsibility. *See id*. at 18. This produced an adjusted offense level of 29. *See id*. The District Court then determined that Defendant had four criminal history points due to three DUI and one aggravated assault convictions. *See id*. at 5, 18. Consequently, Defendant fell within the third criminal history category. *See id*. at 18. Based on Defendant's adjusted offense level and criminal

Defendant did not pursue a direct appeal to the Sixth Circuit.

## II.  Issues Presented

On August 21, 2006, Defendant filed the instant § 2255 petition, substantively arguing: a) the District Court miscalculated the drug quantity attributable to Defendant; b) Defendant's base offense level should reflect a lower value based on his "mitigating role" in the conspiracy; and c) Defendant qualifies for a "safety valve" reduction pursuant to 18 U.S.C. § 3553(f).  Defendant also asserts ineffective assistance of counsel in connection with these and various other asserted errors. Petitioner contends that an evidentiary hearing is needed to resolve his ineffective assistance claims.

In addition to these arguments, Defendant "requests" that the Court : 1) compel the United States to honor its commitment to move for a downward departure pursuant to §5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e); 2) retroactively apply the decisions in *Apprendi*, *Blakely*, and *Booker* on collateral review; and 3) expunge the dismissed counts.

Lastly, as a key threshold issue, Defendant and the United States disagree concerning the validity of Defendant's waiver, and whether that waiver effectively bars collateral review in this matter.   Indeed, the United States wholly responded to the petition by filing a motion to dismiss premised on the waiver.  *See* DE# 82.[2]

## II.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek relief because a sentence was imposed

---

history category, Defendant's advisory guideline sentencing range was 108 to 135 months.  *See id*.

[2]

The Court proceeds to evaluate all matters presented.  The pro se nature of the petition results in a comparatively lenient construction by the Court.  *See Franklin v. Rose*, 765 F.2d 82, 84- 85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

in violation of the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence was in excess of the maximum authorized by law. *See* 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 82 S.Ct. 468, 471 (1962)).

## IV. Analysis

### A. Procedural Matters

The parties do not raise–and the Court does not find–procedural defects relating to successiveness, timeliness, or jurisdiction. The parties do contest whether Defendant validly waived the right to collaterally attack his conviction and sentence in this matter. The Court will address this threshold issue before reaching the merits.

### Validity of Defendant's Waiver under the Plea Agreement

The plea agreement provides that "Defendant waives the statutory right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence." *See* Plea Agreement ¶ 14. Since the waiver is unconditional, Defendant automatically "triggered" the provision by instituting this action. *See United States v. Robinson*, 455 F.3d 602, 611 (6th Cir. 2006). The unlimited waiver theoretically applies to any claim that Defendant may raise on appeal or by collateral attack, including Defendant's ineffective assistance of counsel claims. *See Davila v. United States*, 258

6

F.3d 448, 451 (6th Cir. 2001).

While the Sixth Circuit undoubtedly endorses appeal and collateral-attack waivers, a waiver must be "informed and voluntary" to be enforceable.  *See  In re Acosta*, 480 F. 3d. 421 (6th Cir. 2007).  The Sixth Circuit distinguishes cases involving "issues a defendant has validly agreed not to appeal or attack collaterally, from those that go to the very validity of a guilty plea."  *See id.*  Thus,

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*Id.* (citation omitted).  The *Acosta* Court essentially posited, "[c]laims that a guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel . . . generally cannot be waived."  *See id.* n.2

The effort is to prevent circularity: Thus, per *Acosta*, a plea/waiver should not, by its terms, illogically foreclose evaluation of an argument that attacks the basis for or validity of the plea/waiver.  At the same time, simply accepting a defendant's blanket characterization of guilty plea invalidity and/or ineffective assistance, and thus opening the merits, may substantially dilute the benefit and economy behind the appeal and collateral attack waiver.  Some courts have reached a balance by screening the § 2255 argument, as to plea/waiver validity, for merit.  *See, e.g., Reneau v. United States*, 2006 WL 3019762, at *4 (S.D.N.Y. 2006)(holding "waiver will be enforced where the record reveals that the waiver was knowing and voluntary and that the ineffective assistance claim has no merit"); *Harris v. United States*, 380 F.Supp.2d 278, 282 (S.D.N.Y. 2005)("Merely asserting ineffective assistance of counsel, however, does not automatically render a plea agreement

7

unenforceable . . . Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced."). The Sixth Circuit's decision in *Jones v. United States*, 120 Fed. Appx. 594 (6th Cir. 2005), supports that a reviewing court may examine the record to assess the validity of a waiver, even when a petitioner, in conclusory fashion, alleges that a plea is invalid or a waiver results from ineffective assistance. *Acosta* also suggests that enforcement would be proper where "defendant did not articulate a basis for attacking the validity of his plea." *See Acosta*, 480 F.3d at 421 (citing *United States v. McGilvery*, 403 F.3d 361, 363 n.2 (6th Cir. 2005)).

This Court is unpersuaded by Defendant's arguments, on this record, and finds the waiver provision is enforceable. The right to appeal or collaterally attack a conviction or sentence under § 2255 may be waived in a plea agreement if the waiver is informed and voluntary. *See Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)(explaining that a defendant in a criminal case may waive any right via a plea agreement, including constitutional rights). The record in the instant matter reflects an informed and voluntary wavier. By signing the plea agreement, Defendant acknowledged that he reviewed it with counsel and understood its terms. *See* Plea Agreement ¶ 17. At rearraignment, Defendant again affirmed before the District Court that he read the plea agreement, reviewed it with counsel, and understood its provisions. *See* Rearraignment Hearing at 12. He also listened as the United States Attorney summarized the terms of the plea agreement, including the waiver provision. *See id*. at 15. Defendant and his counsel both agreed that the summary was accurate. *See id*. at 16. In addition, the District Court personally addressed Defendant and specifically informed him of the waiver provision. *See id*. at 24-25. Defendant again acknowledged his understanding. *See id*. at

8

25.  Defendant's responses were voluntary and under oath, and the District Court established Defendant's competency at the start of the hearing.  *See id*. at 4-7, 34.

In light of this overwhelming record, Defendant cannot demonstrate that he misunderstood the consequences of waiving the "right to attack collaterally" his conviction or sentence.  *See Jones v. United States*, 120 Fed. Appx. at 596.   Plainly, Defendant's repeated acknowledgments–voluntarily provided under oath–refute the conclusory and unsupported allegation that he unknowingly agreed to the waiver.  *See id*.

Furthermore, it is not necessary for the plea agreement, the United States, or the District Court to explain specifically that a waiver precludes ineffective assistance of counsel claims.  A brief summary of the waiver provision at arraignment, by either the court or the United States, is sufficient to comply with Rule 11(b)(1)(N) and to establish a knowing and voluntary waiver.  *See United States v. Sharp*, 442 F.3d 946, 949-52 (6th Cir. 2006); *United States v. Broom*, 207 Fed. Appx. 565, 568-69 (6th Cir. 2006).  Without question, the District Court satisfied its obligations under Rule 11 in this matter by stating that Defendant is "waiv[ing] the statutory right to appeal and the right to attack collaterally the guilty plea, conviction, and the sentence in this case."[3]  *See* Rearraignment Hearing at 24-25; *see also Sharp*, 442 F.3d at 949-52.

Finally, the Court views the conclusory ineffective assistance arguments presented as insufficient to defeat the waiver, under *Acosta*.   Defendant argues that: a) merely advising a defendant to waive his appellate rights constitutes ineffective assistance; b) counsel "in no way should" advise Defendant to waive his appellate rights "before sentencing because the sentencing

---

[3]

In addition to the District Court, the United States also addressed the waiver provision when the Government summarized the provisions in the plea agreement.  *See* Rearraignment Hearing at 15.  Defendant and his counsel acknowledged that the summary was accurate.  *See id*. at 16.

9

could have difficulties;" and c) Defendant's waiver was one-sided since the Government did not agree to a corresponding appellate waiver.

To succeed on his ineffective assistance of counsel claims, Defendant must prove both that trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 104 S.Ct. 2052, 2064, 2068 (1984). In performing this evaluation, "counsel is strongly presumed to have rendered adequate assistance." *See id.* at 2066. In light of the applicable standards and presumptions, Defendant's arguments do not establish deficient representation as to the fact of waiver.

Defendant first contends that counsel "was so ineffective that he waived [Defendant's] right to appeal." Defendant, however, cannot demonstrate inadequate representation merely because the plea agreement contained a waiver of Defendant's appellate rights. *See United States v. Leyva*, 2002 WL 31056694, at *2 (N.D. Ill. 2002). As has been noted, the Sixth Circuit readily enforces such waivers, provided the affected defendant waives knowingly and voluntarily. *See Jones*, 120 Fed. Appx. at 596 (recognizing enforcement of waiver of collateral attack, as to conviction and sentence, including waiver of ineffective assistance claim, if such is "informed and voluntary"). As a result of the plea agreement and Defendant's cooperation, two charges were dismissed, and Defendant received a significantly lighter sentence that fell below the statutory minimum and the advisory guideline range. In view of this outcome, Defendant does not credibly show that he was prejudiced

by the waiver or that counsel performed ineffectively.  *See Strickland*, 104 S.Ct. at 2064, 2068;

*Leyva*, 2002 WL 31056694, at *2.

Secondly, Defendant suggests it was error for counsel to advise him to waive his appellate

rights before the District Court imposed sentence.  Defendant's argument ignores convention and

procedure.  Defendants who agree to waive the right to challenge their sentences necessarily do so

before sentence imposition.  *See*, *e.g.*, Fed. R. Crim. P. 11(b)(1)(N).  Moreover, Defendant does not

explain how the "premature" waiver prejudiced him since Defendant ultimately received a sentence

below the statutory minimum and the advisory guideline range.[4]  As a result, Defendant can satisfy

neither prong of the *Strickland* test on the basis of this claim.  *See Strickland*, 104 S.Ct. at 2064,

2068.

As additional evidence of counsel's alleged ineffectiveness, Defendant finally notes that "no

place in the plea agreement did the Government waive their right to appeal."  Defendant's concern

in this regard is baseless.  The Government did not and would not appeal since Defendant admitted

to the underlying facts and pled guilty.  Plainly, there is no prejudice or ineffective representation

relating to this argument.  *See Strickland*, 104 S.Ct. at 2064, 2068.

To the extent that Defendant attacks his waiver based on ineffective assistance of counsel,

those claims are without merit.  Defendant offers no credible evidence of ineffective representation

in connection with his waiver, which occurred in a knowing and voluntary fashion.

---

[4]

Defendant likely would have retained a right to appeal if the sentence itself had been illegal.
*See Acosta*, 480 F.3d at 421 n. 2 (citing *United States v. Caruthers*, 458 F.3d 459, 472 (6th Cir.
2006)("[A]n appellate waiver does not preclude an appeal asserting that the statutory- maximum
sentence has been exceeded.").

The waiver thus bars the additional claims raised in Defendant's § 2255 motion.[5]  As the following discussions illustrate, even if the Court considered Defendant's remaining arguments, those arguments would fail.  The Court addresses and alternatively recommends rejection of Defendant's remaining claims on the merits.

*Miscalculated Drug Quantity*

Count 1 alleged that Defendant and others conspired to possess with intent to distribute more than 1000 kilograms of marijuana.  *See* Indictment.  Defendant contends the quantity of drugs alleged in the indictment is inaccurate because a distinct laboratory report from a forensic examination reflects less than the charged amount.  *See* DE# 71, § 2255 Motion, Report of Forensic Laboratory Examination (Exhibit to Memorandum).

Defendant mistakes the significance of the laboratory report.  The Government and Court did not rely on the results of the laboratory examination to establish the charges in Count 1.  Rather, Defendant expressly admitted, in the plea agreement, that it was foreseeable to attribute 1000 kilograms of marijuana to him for his part in the conspiracy.  *See* Plea Agreement ¶ 4.  Moreover, Defendant acknowledged the accuracy of this representation at rearraignment and does not refute this admission in his brief, which focuses exclusively on the laboratory report.  *See* Rearraignment Hearing at 29 (testimony of Defendant at rearraignment)("Q: [C]an you tell me in your own words what it was that you did to be guilty of that charge?  A: Conspired with Jesse [Loya] on 1,000

---

[5]

Because Defendant did not pursue a direct appeal, the procedural default doctrine may additionally bar review of those §2255 claims that are unrelated to ineffective assistance of counsel. Ordinarily, a defendant may not use a §2255 motion as a substitute for bringing an appeal.  *See Reed v. Farely*, 512 U.S. 339, 354, 114 S.Ct. 2291 (1994).  An exception to this rule extends to ineffective assistance of counsel claims, which generally are not cognizable on direct appeal.  *See Massaro v. United States*, 123 S.Ct. 1690, 1693-94 (2003); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004).

kilograms of marijuana.").

As a result, the record fully supports the charge in and plea to Count 1. The stipulated factual basis reflects and Defendant repeatedly acknowledged attribution of 1000 kilograms of marijuana to Defendant. Defendant's reliance on the laboratory report is misplaced, and his argument ignores the impact of his factual admissions. Thus, there is no error or miscalculation involving the drug quantity. Defendant accordingly fails to demonstrate a "complete miscarriage of justice" or "substantial and injurious effect or influence on the proceedings" relating to this argument. *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

### *"Mitigating Role" Adjustment*

Defendant believes his base offense level should reflect a lower value due to his "mitigating role," pursuant to §3B1.2(b) of the Sentencing Guidelines. Namely, Defendant indicates that he qualifies as a "minor participant" after comparing the relative involvement between him and another co-conspirator. *See* U.S. Sentencing Guidelines Manual § 3B1.2(b) (2005).

The Guidelines define a minor participant as someone "who is less culpable than most other participants, but whose role could not be described as minimal." *See id*. at § 3B1.2 comment. n. 5. At sentencing, the defendant bears the burden of proving that he "played a minor role" by a preponderance of the evidence. *See United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001). Although Defendant failed to raise this issue at sentencing, the available facts suggest Defendant could not have met his burden.

First, Defendant identifies only one conspirator that he believes is more culpable than himself. In a wide-ranging conspiracy, however, the relative conduct of *one* person does not establish that Defendant is someone who is less culpable than *most other* participants. *See United*

13

*States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).  Rather, Defendant's conduct must be compared to the actions of the "average participant."  *See id.*; *see also United States v. Rippy*, 38 Fed. Appx. 203, 211 (6th Cir. 2002).

In this case, Defendant admitted that he actively engaged in the transportation, storage, and distribution of large amounts of marijuana.  The stipulated factual account further implies that Defendant collected and handled substantial proceeds from the illicit drug transactions.  The various services performed by Defendant highlight his critical role in the conspiracy and do not suggest that Defendant is entitled to a reduction under § 3B1.2.  *See Jackson*, 55 F.3d at 1225 ("The evidence supports the district court's determination that [defendant's] role was not minor because it suggests that [defendant's] role was pivotal."); *see also United States v. Koehler*, 77 Fed. Appx. 306, 308 (6th Cir. 2003)(finding the defendant did not qualify as a minor participant "because [the defendant] had essentially provided the conspirators with a warehouse to store drugs and he agreed to participate in the distribution").

Moreover, the mutually accepted guideline recommendations in the plea agreement did not include a mitigating role adjustment.  *See* Plea Agreement ¶ 8.  This conspicuous omission suggests the parties originally agreed and did not believe that the mitigating role provision applied under the facts of the case.  In light of all these circumstances, the Court finds there is no basis to apply the "mitigating role" adjustment in this matter.  As such, there is no "miscarriage of justice" or error that amounts to a "violation of due process" in connection with this claim.  *See Watson*, 165 F.3d at 488.

*18 U.S.C. § 3553(f) Safety Valve Reduction*

Defendant submits the District Court should have considered and applied the "safety valve" provision, pursuant to 18 U.S.C. § 3553(f), with respect to his sentence. Defendants who are eligible for the safety valve reduction must satisfy five criteria. *See* 18 U.S.C. § 3553(f)(1)-(5). Among those requirements, the defendant cannot have more than one criminal history point, as determined by the sentencing guidelines. *See id.* at § 3553(f)(1).

Defendant's criminal record features one aggravated assault and three DUI offenses. *See* DE#60, Presentence Report ¶¶ 48, 51, 52, and 53. According to the guidelines, sentences relating to aggravated assault and DUI convictions are included in the criminal history calculation. *See* U.S. Sentencing Guidelines Manual § 4A1.2(c) and comment. n. 5 (2005). As a result, the District Court correctly assessed Defendant with four criminal history points, despite Defendant's objections relating to the DUI offenses. *See* Sentencing Hearing at 4-5, 18. These four points squarely remove Defendant from the safety valve provision. *See* 18 U.S.C. § 3553(f)(1). Because Defendant is safety-valve ineligible, he cannot meet his burden on habeas review under this claim.[6] *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

*Ineffective Assistance of Counsel*

Defendant also asserts ineffective assistance of counsel in connection with the foregoing alleged substantive errors. As stated previously, to succeed on a claim of ineffective assistance of counsel, Defendant must prove a) trial counsel's representation fell below an objective standard of reasonableness and b) there is a reasonable probability that, but for counsel's unprofessional errors,

---

[6] Of course, the Court *did* sentence Defendant "outside the mandatory minimum," *see* Sentencing Hearing at 37, potentially mooting the issue.

the result of the proceeding would have been different.  *See Strickland v. Washington*, 104 S.Ct. 2052, 2064, 2068 (1984).  In performing this evaluation, "counsel is strongly presumed to have rendered adequate assistance."  *See id.* at 2066.

With respect to the laboratory report, Defendant claims that counsel rendered ineffective assistance by failing to investigate and challenge the charges in Count 1 based on the results of the laboratory examination.  Count 1 alleges that Defendant and others conspired to possess with intent to distribute 1000 kilograms of marijuana, but a particular forensic examination of the marijuana seized and connected to Defendant, and cited by Defendant now, identified a lesser amount of marijuana.  *See* § 2255 Motion, Report of Forensic Examination.

Defendant, however, stipulated in the plea agreement that it was foreseeable to attribute 1000 kilograms to him for his part in the conspiracy.  *See* Plea Agreement ¶ 4.  He again acknowledged the accuracy of this representation at his rearraignment.  *See* Rearraignment Hearing at 29.  Thus, the results reflected in the laboratory report do not impact the outcome of the proceedings.  As result, counsel's inaction regarding the report did not prejudice Defendant and did not constitute a level of representation that fell below an objective standard of reasonableness.  *See Strickland*, 104 S.Ct. at 2064, 2068.

Defendant's second claim for ineffective assistance relates to counsel's failure to pursue a "mitigating role" adjustment.[7]  As the previous analysis determined, however, this provision would not apply to Defendant based on the stipulated facts.  Defendant identifies only one conspirator that

---

[7]   Counsel did not neglect this argument entirely.  In Defendant's objections to the Presentence Investigation Report, counsel urged the District Court to consider whether Defendant qualified as a minor participant.  For unstated reasons, however, counsel withdrew this objection at Defendant's sentencing hearing.  Notably, the recommended guideline calculation in the plea agreement did not include or address an adjustment under § 3B1.2.

may be more culpable than himself, but this does not establish that Defendant is a minor player who is less culpable than most other participants. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). Moreover, Defendant's degree of involvement suggests that he performed more than a minor role. *See id.*; *see also United States v. Koehler*, 77 Fed. Appx. 306, 308 (6th Cir. 2003). As result, counsel's failure to pursue this argument did not prejudice Defendant and did not constitute representation below an objective standard of reasonableness. *See Strickland*, 104 S.Ct. at 2064, 2068.

Lastly, Defendant alleges ineffective assistance because counsel did not establish that Defendant qualified for the "safety valve" provision. *See* 18 U.S.C. § 3553(f). However, the District Court properly assessed Defendant with four criminal history points based on Defendant's criminal record. *See* DE# 60, Presentence Report ¶¶ 48, 51, 52, and 53; U.S. Sentencing Guidelines Manual § 4A1.2(c) and n. 5 (2005); and Sentencing Hearing at 18. Due to these criminal history points, Defendant could not have been eligible for the safety valve provision. *See* 18 U.S.C. § 3553(f)(1). As such, Defendant cannot demonstrate prejudice or objectively unreasonable representation in connection with this claim. *See Strickland*, 104 S.Ct. at 2064, 2068.

For these reasons, the alleged errors and Defendant's corresponding ineffective assistance of counsel claims all fail. The Court proceeds to address Defendant's remaining "requests."

### *Downward Departure Pursuant to §5K1.1*

Defendant requests that the Court compel the United States to honor a commitment to move for a downward departure pursuant to §5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e). Defendant's request is baseless. The record reflects that the United States did in fact move for a downward departure based on Defendant's cooperation under the foregoing provisions. *See* DE#

46. Moreover, the District Court sustained this motion. *See* Sentencing Hearing at 19. As such, there is no error relating to this claim.

*Retroactive Application*

Defendant also requests that the Court retroactively apply the Supreme Court decisions in *Apprendi*, *Blakely*, and *Booker* on collateral review. This is unnecessary, however, because these decisions were issued before Defendant's rearraignment and sentencing and the District Court applied the cases.

At rearraignment, the District Court explained that the sentencing guidelines are non-binding and represent only one factor in determining Defendant's sentence. *See* Rearraignment at 20-21. The District Court then discussed the additional sentencing factors under 18 U.S.C. § 3553(a). *See id*. at 23-24. By addressing the advisory nature of the guidelines and the § 3553(a) sentencing factors, Defendant's sentencing squarely conformed to the holding in *Booker*. *See United States v. Webb*, 403 F.3d 373, 381 (6th Cir. 2005); *United States v. McBride*, 434 F.3d 470, 475-76 (6th Cir. 2006); *United States v. Morris*, 448 F.3d 929, 931-32 (6th Cir. 2006). The District Court itself characterized the sentence imposed as "pursuant to . . . the Supreme Court's recent decisions in *Booker* and *Fanfan*." *See* DE#64, Sentencing Hearing at 37.

The District Court similarly complied with *Blakely* and *Apprendi*. Although the amount of drugs alleged in the indictment influenced the sentencing proceedings, Defendant admitted in the plea agreement and again acknowledged at rearraignment that 1000 kilograms of marijuana were properly attributable to him for his part in the conspiracy. *See* Plea Agreement ¶ 4; Rearraignment Hearing at 29. "[T]here is no [constitutional] violation when a district court bases a sentencing determination on facts admitted by the defendant." *United States v. Dillard*, 438 F.3d 675, 684-85

18

(6th Cir. 2006).  Because Defendant stipulated and admitted to the relevant amount of marijuana in the plea agreement, the District Court properly relied on this fact in its sentencing determination. *See id*. at 685.

In sum, Defendant's conviction and sentence is consistent with the aforementioned Supreme Court decisions.  Habeas relief on the basis of these decisions is unwarranted.

*Expungement*

The District Court, on motion by the United States, dismissed two counts against Defendant in this matter.  Defendant now  requests that the Court expunge any reference to these counts from the record.  Due to the dismissal, Defendant believes this information is rendered "unnecessary" and "should no longer exist."

Without deciding whether Defendant's § 2255 motion is the appropriate avenue to address this issue, the Court summarily rejects Defendant's request.  The view among federal courts is that records of valid arrests, indictments, or convictions ordinarily may not be expunged–even if the charges are later dismissed.  *United States v. Flagg*, 178 F.Supp.2d 903, 905 (S.D. Ohio 2001); *see also United States v. Schnitzer*, 567 F.2d 536, 539-40 (2d Cir. 1977); *United States v. Robinson*, 1996 WL 107129, at *1-2 (6th Cir. 1996).

Exceptions to this general rule apply when: a) the charges are dismissed and the Government concedes the suspect is innocent; b) the underlying arrest is constitutionally infirm; c) the arrest or prosecution is based upon a statute subsequently declared unconstitutional; or d) authorities pursued the arrest or prosecution for improper reasons, such as harassment or intimidation.  *See Flagg*, 178 F.Supp.2d at 905-06.

In this case, the District Court dismissed the counts in connection with a plea agreement–not

19

because of Defendant's innocence.  There is also no indication that the remaining exceptions should apply.  As a result, expungement would not be appropriate in this matter.

### C.  Evidentiary Hearing

Defendant seeks an evidentiary hearing to address his ineffective assistance of counsel claims.  The Court previously rejected this request at the outset of the case.  *See* DE#76 (denying evidentiary hearing).

A district court may permit additional discovery, in the context of a habeas proceeding, if the "habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate."  *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001).  A hearing is not required, however, where the petitioner's allegations cannot be accepted as true because they are inherently incredible, refuted by the record, or conclusory.  *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

Defendant's § 2255 motion does not raise any specific factual disputes that warrant further discovery.  Rather, Defendant's § 2255 motion involves legal issues, and the clear and developed record refutes Defendant's claims without need of further supplementation.  No evidentiary hearing is necessary if, as is the case here, the record conclusively shows that petitioner is entitled to no relief.  *See Blanton*, 94 F.3d at 235.  As such, the Court orders no evidentiary hearing in this case prior to disposition.

### D. Certificate of Appealability

A Certificate of Appealabiltiy may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). The petitioner must further indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 262 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Defendant has not made a "substantial showing" as to any claimed denial of rights. The records establishes an informed and voluntary waiver by Defendant. Moreover, Defendant's claims lack merit irrespective of his waiver. The Court recommends that no certificate issue by the District Court.

## V. Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court deny, with prejudice,  the motion to vacate, set aside, or correct sentence, *see* DE# 71; and

2) the District Court refuse, without exception, a certificate of appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1) and local rule, within ten days after being served with a copy of this recommended decision, any party may

serve and file written objections to any or all portions for consideration, de novo, by the District

Court.

      This the 16th day of April, 2007.

Signed By:

Robert E. Wier

United States Magistrate Judge